OPINION OF THE COURT
Timothy J. Lawliss, J.
Petitioner Demetrius “D.” has fathered six children: Bettima,[1] Trey, Alexa, Isiah, Kiarra and Zander. Of Mr. “D.” ’s six children, the respondent Lori “T.” is the mother of one of them: Isiah “T”, date of birth xx/xx/2002, the subject of this proceeding. By order of this court dated December 17, 2004, Mr. “D.” was required to pay child support for Isiah to Ms. “T.”[2] At the time that this court issued its 2004 order for the benefit of Isiah, the court concluded that Mr. “D.” was already paying child support pursuant to an agreement or court order for Bettima and Trey, who reside in Montreal, Canada, and for Alexa through the courts of the State of Washington. At the time of Isiah’s 2004 support order, there was no finding that Mr. “D.” was paying child support for Kiarra located in Sweden. Zander was not born until 2006.
After Isiah’s 2004 support order was issued, Mr. “D.” began actually paying child support pursuant to court orders for the benefit of Kiarra through the courts of Sweden and for the benefit of Zander through the courts of the State of Washington. In addition, after Isiah’s 2004 support order was issued, Mr. “D.” ’s obligation to pay support for the benefit of Alexa increased. On May 10, 2010, Mr. “D.” filed a petition with this court seeking a downward modification of his child support obligation regarding Isiah.
Mr. “D.” advances three primary arguments in support of his downward modification request. First, as a result of Mr. “D.” ’s change in employment from the Department of Defense to Alaskan Airlines, his income has been reduced. Second, Mr. *230 “D.” should, pay less support for Isiah as a result of his new obligations to pay child support for Kiarra and Zander. Third, Mr. “D.” should pay less support for Isiah as a result of his obligation to pay an increased amount of child support for Alexa. The Support Magistrate dismissed Mr. “D.” ’s petition and Mr. “D.” has filed objections.
Decrease in Employment Income
With respect to Mr. “D.” ’s arguments regarding a decrease in his employment income, the court agrees with the Support Magistrate that the issue was previously litigated and resolved against Mr. “D.” Mr. “D.” previously filed a petition with this court on May 2, 2008 wherein he alleged as a change in circumstances a “Significant decrease in my income. Started a new job and working strictly 40 hrs a week. No overtime.” It is clear from the Support Magistrate’s June 24, 2008 findings of fact, that Mr. “D.” was referencing the same employment change in his 2008 petition that he references in the instant petition. Mr. “D.” alleged in both his 2008 petition and his instant petition that overtime is not available. The only change between the allegations set forth by Mr. “D.” in his 2008 petition and the instant petition regarding this employment is a change in his hourly rate. His current hourly rate ($20.86) is actually higher than his 2008 hourly rate ($18.41). Mr. “D.” ’s 2008 petition was dismissed with prejudice based upon the Support Magistrate’s finding that Mr. “D.” voluntarily took new employment with less income. Mr. “D.” did not file objections to the Support Magistrate’s order of dismissal or findings of fact both dated June 24, 2008 (bearing docket No. F-xxxxx-xx/xxx).
Effect of New Child Support Orders Regarding Other Children
The Support Magistrate held, as matter of law, that Mr. “D.” ’s new obligations to pay child support for Kiarra and Zander could not form the basis of a downward modification of Mr. “D.” ’s obligation to pay child support for Isiah. The Support Magistrate does not cite any authority for his assertion. Not everyone has six children from four different women in three different countries like Mr. “D.” However, it is certainly common in Family Court for a noncustodial parent to be paying child support pursuant to multiple court orders involving different custodial parents. After initial support orders are issued, modification petitions frequently follow. Notwithstanding the common nature of this pattern, after extensive research, this *231 court cannot find any specific authority that supports or contradicts the Support Magistrate’s legal assertion.
This issue requires an analysis of the application of Family Court Act § 413 (1) (b) (5) (vii) (D) (hereinafter subclause [D]). Obviously, a parent’s obligation to pay child support is based upon the parent’s income and the child’s needs. Generally speaking, the lower a noncustodial parent’s income, the less child support he or she will have to pay. (See Family Ct Act § 413 [1] [b] [1].) For purposes of calculating the noncustodial parent’s child support obligation, subclause (D) provides for a reduction of the noncustodial parent’s income for “child support actually paid pursuant to court order or written agreement on behalf of any child for whom the parent has a legal duty of support and who is not subject to the instant action.”
Under subclause (D), when a noncustodial parent is obligated to pay child support by court order for multiple children, the child obtaining a support order first will receive more child support than children who receive support orders later.[3] This situation is caused by the fact that the first child’s support order is based upon the noncustodial parent’s income without a reduction pursuant to subclause (D), but with each subsequent child, the noncustodial parent’s income will continue to be reduced by greater and greater amounts as a result of subclause (D).
From the children’s perspective, the fact that one child receives more child support than another child based solely upon which custodial parent obtains the first support order is unfair and irrational. Obviously, the children cannot control which parent applies for support first nor can the child control the speed of litigation. Nevertheless, this is the statutory law of the State of New York. It should be noted that it is not the age of the children, but rather the order in which the children receive a child support order that determines which children will receive preference under the law.[4] Of course, it would also be unfair and irrational to give preference to one child over another based solely upon birth order.
Subclause (D) also raises multiple issues with respect to modification petitions. There is no express provision in the Fam *232 ily Court Act which limits the subclause (D) deduction in modification cases to court orders issued prior to the original order sought to be modified. In other words, in the event that a parent demonstrates a material change of circumstances which warrants the reapplication of the Child Support Standards Act, there is no language that excludes new orders issued between the date of the original order and the date of the hearing on modification petition from subclause (D). Thus, the court concludes that if there is a material change of circumstances that warrants the new application of the Child Support Standards Act, the noncustodial parent would be entitled to a deduction under subclause (D) for all child support actually paid pursuant to court orders for other children, whether or not the court orders for other children were issued before or after the original order for the subject child.
Of course, whether or not the noncustodial parent should be entitled to a deduction pursuant to subclause (D) when a material change of circumstances has been established is a different question than whether or not the new child support orders for other children themselves could constitute a material change of circumstances. Under the Support Magistrate’s decision, under no circumstances could the subsequent orders for other children constitute a material change of circumstances in and of themselves with respect to the subject child’s orders. This court finds that holding too inflexible and contrary to general case law regarding change of income.
There are many cases that hold that a change in income can be a sufficient change in circumstances to warrant a downward modification of a prior order of child support. (See Matter of Silver v Reiss, 74 AD3d 1441 [3d Dept 2010]; Matter of Perry v Pica, 22 AD3d 903 [3d Dept 2005]; Matter of Fuller v Fuller, 11 AD3d 775 [3d Dept 2004]; Matter of Bukovinsky v Bukovinsky, 299 AD2d 786 [3d Dept 2002].) A self-created, voluntary hardship, however, brought on by one’s own actions or inactions is insufficient to establish entitlement to a downward modification. (See Matter of Freedman v Horike, 68 AD3d 1205 [3d Dept 2009]; Matter of Bianchi v Breakell, 48 AD3d 1000 [3d Dept 2008]; Matter of Perry v Pica, 22 AD3d 903 [2005]; Matter of Fuller v Fuller, 11 AD3d 775 [2004]; Matter of Rosalind EE. v William EE., 4 AD3d 629 [3d Dept 2004]; Matter of Reach v Reach, 307 AD2d 512 [3d Dept 2003]; Matter of Marrale v Marrale, 44 AD3d 773 [2d Dept 2007].)
In this court’s view, the better approach to the presented issue is to apply this general standard regarding changes in *233 income. Thus, a new order of child support for another child which reduces the noncustodial parent’s income with respect to the subject child pursuant to subclause (D) may, but does not necessarily, constitute a material change of circumstances which warrants the re-application of the Child Support Standards Act.[5]
The court will now apply this standard to the pending action. Since the 2004 order issued for the benefit of Isiah, Mr. “D.” has received two additional court orders to pay child support. One order regards Kiarra and the other regards Zander. After 2004, Mr. “D.” was also required to pay an increased amount of court-ordered child support concerning the child Alexa. The court will now analyze each of those changes.
With respect to Zander, the court notes that Zander was born in late 2006, almost two years after Isiah’s 2004 support order. In the absence of evidence to the contrary, the court concludes that Mr. “D.” voluntarily engaged in acts which led to the birth of Zander. As a result of prior court proceedings, Mr. “D.” was fully aware of the potential consequences of his actions including the potential that he may subject himself to further court orders that require him to pay child support for Zander. Accordingly, the court concludes that to the extent Mr. “D.” ’s child support obligation regarding Zander reduces his income under subclause (D), the reduction was brought about by Mr. “D.” ’s own voluntary actions and, therefore, is insufficient to establish entitlement to a downward modification.
Turning to Kiarra, the court notes that Kiarra was born prior to Isiah’s 2004 support order, but was not the beneficiary of a child support order herself until after the issuance of Isiah’s 2004 support order. Kiarra’s support order was issued as a result of a divorce between Mr. “D.” and Kiarra’s mother in Sweden. Mr. “D.” failed to present any evidence as to the cause of the divorce or why he was court ordered to pay child support. Thus, the court holds that Mr. “D.” failed to demonstrate that any *234 reduction of his income brought on by Kiarra’s support order in Sweden was not the result of his own voluntary actions and, thus, Mr. “D.” has failed to establish that he is entitled to a downward modification.
Similarly, Mr. “D.” did not provide the court with any information that demonstrated that his increased obligation to pay support for Alexa in the State of Washington was not the result of his own voluntary actions and, thus, Mr. “D.” has failed to establish that he is entitled to a downward modification. Furthermore, even if the increase regarding Alexa was not self-created and was, in fact, involuntary, the increase with respect to the Washington order was so minimal (a change from $108 biweekly to $264 monthly) it would not constitute a material change of circumstances.
The court has considered the other arguments raised by Mr. “D.” in his objections and finds them to be without merit. There is no basis in the record to conclude that the Support Magistrate “has something against” Mr. “D.” Mr. “D.” ’s argument with respect to Ms. “T.” ’s alleged failure to provide financial disclosure is irrelevant because Mr. “D.” ’s petition was based upon the changes in his own financial circumstances and not changes in Ms. “T.” ’s financial circumstances. Had Mr. “D.” successfully met his burden in establishing a material change of circumstances warranting a modification, the court would have remanded the matter for further financial disclosure. Mr. “D.” did not.
In final analysis, the court reaches the same conclusion as the Support Magistrate, the petition must be dismissed, but for different reasons. The court holds that Mr. “D.” failed to meet his burden of proof to establish that he is entitled to a downward modification because Mr. “D.” failed to establish that the decreases in his income, as a result of the new child support orders, were not brought on by his own voluntary actions or inactions.
Accordingly, it is hereby ordered, that Demetrius “D.” ’s objections to the Support Magistrate’s order of dismissal are hereby denied.

. At times Bettima is referred to as Patima, the court is unaware as to which name is the child’s legal name.

. As modified by an adjustment order of support effective May 30, 2008. (See Family Ct Act § 413-a.)

. Obviously this assertion holds as a general proposition when all other factors are equal and there is no deviation from the presumptively correct amount of child support. (See Family Ct Act § 413 [1] [F].)

. Obviously, the same logic applies to payments made pursuant to a written agreement under the terms of subclause (D).

. The court acknowledges that this statutory interpretation has the potential to create an infinite loop. The only limitation upon this infinite loop is a factual determination in a particular modification case that the prior changes of the support obligations do not constitute a material change of circumstances. The only solution to this problem is to make the parents of each of the children of the noncustodial parent necessary parties to any proceedings commenced concerning child support for any of the noncustodial parent’s children. Aside from the practical problems presented by such a solution, there may be several cases, such as the case at bar, in which the court does not have jurisdiction over all of the parents.